## In re WHITING.

(District Court, W. D. North Carolina, at Greensboro. January 1, 1925.)

**1. Insurance ⊕⇒586—Beneficiary has no "vested interest" where beneficiary may be changed at will of insured.**

Where by the terms of a life policy the beneficiary may be changed at the will of the insured, the beneficiary named has no "vested interest" therein, which means a future interest not dependent on an uncertain period or event, or a fixed present right of future enjoyment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vested Interest.]

**2. Bankruptcy ⊕⇒396(3)—Constitutional provision held not to affect rights in insurance policies.**

Const. N. C. art. 10, § 7, providing that, on the death of a husband leaving life insurance payable to his wife and family, it shall be exempt from his debts, has no application to the case of a living husband, who has been adjudged bankrupt, and who holds policies payable to his wife, and does not affect the right to such policies as between the wife and his creditors.

**3. Bankruptcy ⊕⇒143(12)—Insurance policies held to vest in trustee.**

C. S. N. C. § 6464, providing that every policy of life insurance made payable to a married woman inures to her separate use and benefit, does not give a wife, during the lifetime of her husband, a vested interest in policies held by him and payable to her, where by the terms of the contracts he may change the beneficiaries at will, and on his bankruptcy, such policies, if they have a surrender value payable to him, pass to his trustee, under Bankruptcy Act, § 70a(5) being Comp. St. § 9654, as property which he could have transferred.

In Bankruptcy. In the matter of W. S. Whiting, bankrupt. On review of order of referee. Reversed in part.

Lee F. Miller, of Johnson City, Tenn., and Duff Merrick and Francis J. Heazel, both of Asheville, N. C., for petitioner.

Squires & Whisnant, of Lenoir, N. C., for trustee.

WEBB, District Judge. This cause came on for hearing upon petition for review filed by the trustee and the bankrupt in regard to policies of insurance on the life of the bankrupt, and the conclusions of law of the referee, and has been extensively argued by brief for both the bankrupt and the trustee.

W. S. Whiting was adjudicated a bankrupt on the 9th of April, 1924. At the time of the adjudication the bankrupt had 10 life insurance policies, totaling $72,500. The cash surrender value and loan value of these various policies on the aforementioned date was $18,415.78. In all of said policies Carolina L. Whiting, wife of the said W. S. Whiting, is the beneficiary. In five of said policies she was named as beneficiary when the policies were issued. In the other five the estate of the bankrupt was named as beneficiary, but the beneficiaries in these policies were changed more than four months before the bankruptcy, and the said Carolina L. Whiting was substituted as beneficiary; so at the time of the bankruptcy the said Carolina L. Whiting was the beneficiary in all of the policies. All of said policies contained a clause permitting the change of beneficiary at the will of the insured, W. S. Whiting.

When the bankrupt filed his schedule, he listed these insurance policies and claimed them as exempt under the provisions of the Constitution and laws of North Carolina. At the first meeting of the creditors the bankrupt was permitted to amend his schedule, so as to claim the exemption of $500 of personal property allowed by the Constitution of North Carolina. The question now is: Did these policies pass to the trustee, or are they exempt under the Constitution and laws of North Carolina? The trustee held that the five policies originally naming Carolina L. Whiting as beneficiary did not pass to the trustee, and that the other policies did so pass. From this holding both bankrupt and trustee asked that the ruling of the referee be reviewed by this court. So the question is whether or not, under the Bankruptcy Law and the laws and Constitution of North Carolina, the trustee has a right to take charge of these policies and secure on them the $18,415.78 and apply it to the debts of the bankrupt.

Leaving out of consideration any reference to state exemptions, it is clear that under section 70a of the Bankruptcy Law (Comp. St. § 9654) the trustee would be vested by operation of law with the title of the bankrupt as of the date he was adjudicated, because the cash surrender value and the loan value of the ten insurance policies under the provisions named in these policies are property which the bankrupt

could have transferred. I believe this proposition is not controverted. It will be noted that the bankrupt has not and does not claim exemption of these policies in his own interest, and, if he did so claim, his interest would be limited in amount to $500 under the Constitution of North Carolina.

The case of Cohn v. Malone, Trustee of Cohn, 248 U. S. 450, 39 S. Ct. 141, 63 L. Ed. 352, holds (quoting syllabus) that "the cash surrender value of a life insurance policy, * * * payable to specified persons, with a right in the insured to change the beneficiaries, is assets subject to distribution under the Bankruptcy Act."

Mr. Justice McKenna, writing the opinion of the court in Cohen, Trustee, v. Samuels, 245 U. S. 53, 38 S. Ct. 37, 62 L. Ed. 143, says: "The declaration of subdivision 3 is that 'powers which he might have exercised for his own benefit' 'shall in turn be vested' in the trustee, and there is vested in him as well all property that the bankrupt could transfer or which by judicial process could be subjected to his debts, and especially as to insurance policies which have a cash surrender value payable to himself, his estate or personal representative. It is true the policies in question here are not so payable, but they can be or could have been so payable at his own will and by simple declaration. Under such conditions to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets, and, it might be, a refuge for fraud."

In Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, the court said: "It was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset, otherwise to leave to the insured the benefit of his life insurance."

[1] So it is clear that, unless the general exemption laws of the state withhold these policies from the trustee, there would be no doubt about the title passing immediately to the trustee. Counsel for the bankrupt, however, strenuously maintains in his brief that the wife in this case had a vested interest in all of these policies. This position, however, is decidedly untenable, in view of the great weight of authority holding that in all "changed beneficiary policies" no beneficiary has a vested interest. The said terms of the policy giving the insured the right to change the beneficiary at will absolutely negative the idea that the beneficiary can

have a vested interest in the policy. To hold that the beneficiary of such policy has a vested interest would be tantamount to destroying the "changed beneficiary" provisions of the policy itself.

In Greenberg's Case (C. C. A.) 271 F. 259, 20 A. L. R. 253, Judge Hough, speaking for the Circuit Court of Appeals of the Second Circuit, says: "The beneficiary in a life insurance policy, who may at any time be removed from the benefited position by the insured and against the beneficiary's will, cannot have a vested interest." Indeed, this particular point has been passed upon by our own Circuit Court of Appeals in the case of Reid v. Durboraw (C. C. A.) 272 F. 99, where Judge Woods, speaking for the court, says: "It is true that one named as beneficiary has no vested interest and is not entitled to notice of change; that the right to change a beneficiary is a property right of the assured, which in the case of insolvency the court can require him to exercise in favor of his creditors"—citing Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143.

The case of Lanier v. Insurance Co., 142 N. C. 14, 54 S. E. 786, is presented to the court by counsel for the bankrupt as settling this question against the views just expressed. However, the point in that case was as to the sufficiency of the evidence of the plaintiff to justify a verdict in her behalf. The question of vested interest in a policy containing the "changed beneficiary clause" did not arise at all. The wife and plaintiff was the beneficiary of the insurance policy, which was taken out by the husband, and who turned it over to his wife, and she kept it in her trunk until the husband's death. Soon after the death of her husband the policy disappeared from her trunk and mysteriously turned up in the possession of the defendant insurance company, and the sole question which the court passed upon in that case was the sufficiency of the evidence as presented by the plaintiff to justify the jury in finding a verdict in her behalf. It is true that in the body of the opinion there is a separate paragraph, not connected with the issue under discussion at all, in which the court did say: "The general rule is that the beneficiary of an ordinary life policy has a vested interest and acquires the entire property interest in the contract the moment the policy is executed and delivered"—citing Bank v. Hume, 128 U. S. 195, 9 S. Ct. 41, 32 L. Ed. 370.

A careful perusal of Bank v. Hume, however, will show that it does not support the obiter statement of the learned judge in the Lanier Case, because in the Hume Case the husband was dead. The wife had taken out insurance on her husband's life, and had caused herself to be named as beneficiary in the application for the insurance and in the policy, and the company looked to her for payment of the premiums. The husband from time to time, although insolvent, helped the wife pay some premiums, and the trustee undertook to subject the premiums so paid by the dead bankrupt to his creditor's claims, and in considering said facts in that case the court did use this language: "It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, or by deed or by will, to transfer to any other person the interest of the person named." The court says in explanation of this statement that Mrs. Hume "was confessedly a contracting party to the policy, and therefore held that Mr. Hume, the bankrupt, could not change the beneficiary in the policy, and therefore the premiums on the policy could not be claimed by the trustee."

The facts in the case before us are quite different. Mr. Whiting made the contracts with the insurance company himself, and named various beneficiaries. It is not contended that in any of these policies Mrs. Whiting ever applied to the company for insurance on her husband's life, or that she ever paid a single premium on any of them. Mr. Chief Justice Fuller, in the Bank-Hume Case, explaining the "general rule" referred to, limits it to the following cases and conditions: "Where the contract is directly with the beneficiary," where policies run "to the person insured, but payable to another having a direct pecuniary interest in the life insured," and, third, "where the proceeds are made to inure by positive statutory provisions."

It will be seen, therefore, that neither the Lanier Case, decided by the Supreme Court of North Carolina, nor the Bank-Hume Case, is parallel or applicable to the case under consideration. Indeed, it is a contradiction of terms to say that a policy containing the "changed beneficiary clause" can possibly give a vested interest to the beneficiary. "Vested interest" means generally "future interests that are not dependent on an uncertain period or event; a fixed present right of future enjoyment," and of course it is idle to say that a beneficiary to-day, who may be removed to-morrow, has, or can claim to have, a vested interest.

The case of In re Pittman, decided by that able and distinguished jurist, Judge H. G. Connor, found reported in 275 F. 686, is cited by the counsel for the bankrupt as settling this question in favor of the bankrupt, and this court confesses that Judge Connor has decided this question contrary to the authorities cited and to the view of this court, and, strangely enough, he seems to base his decision largely upon the case of Lanier v. Insurance Co., cited above, and, as said above, this case does not pass upon the question now before the court, and the dictum to the effect that the beneficiary has a vested interest is not supported by the authority cited, to wit, Bank v. Hume. So, in my opinion, the entire question turns upon the fact as to whether or not these life insurance policies are exempted by the general exemption laws of North Carolina.

[2] It is claimed by the bankrupt's counsel that these policies are exempt under these laws, and the section of the Constitution relied upon as exempting them is as follows: Section 7, article 10, of the Constitution of North Carolina provides: "The husband may insure his own life for the sole use and benefit of his wife and children, and in case of the death of the husband the amount thus insured shall be paid over to the wife and children, or to the guardian, if under age, for her or their own use, free from all the claims of the representatives of her husband or any of his creditors."

It is perfectly clear to the court that this section of the Constitution means simply that, when a husband dies leaving insurance to his wife, such insurance shall not be subject to pay the debts of the deceased husband. That, however, is not the case before us now. The husband, W. S. Whiting, and his wife, are both living. Had Mr. Whiting died before he was declared a bankrupt, the wife under this section of the Constitution would have been entitled to every dollar of his insurance, free from all claims of her husband's creditors, and she would have had a vested interest the moment of his death. This section of the Constitution intended to provide for a wife after the husband and bread-winner is gone, and such provisions in the various Constitutions of

the states are regarded generally as wise and humane. It was never intended, however, that the wife should have both the insurance and the bread-winner at the same time.

[3] However, the counsel insists that all of these policies, if not exempt by this section of the Constitution, are exempt by reason of section 6464 of the Consolidated Statutes of North Carolina, which in part reads as follows: "Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred, or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband, or by any other person, and whether the assignment or transfer is made by her husband or by any other person, inures to her separate use and benefit and to that of her children, if she dies in his lifetime."

The Legislature evidently based its right to pass this statute upon the section of the Constitution above quoted, and, so far as it applies to the husband taking the insurance in behalf of his wife, the statute is perfectly constitutional. But this statute is necessarily limited by the limitations of the constitutional provision, and that provision contains this vital clause upon which the whole section hinges, to wit, "and in case of the death of the husband the amount thus insured shall be paid over to the wife," etc. The Legislature could not have intended to make a contingent interest which a beneficiary has in a "changed beneficiary clause" policy become a vested interest during the lifetime of the husband. If it had attempted to do so, it would have failed, because it would have been unconstitutional from two points of view: One being that there is no warrant in the Constitution of the state for such a construction of the statute; and, next, it would have been destroying the contract in the policy itself, which gives to the insured the right to change the beneficiary as often as he chooses.

The Legislature never intended, in my opinion, to allow a man to insure his life for the sum of, say, $72,000, payable to his wife, with a "changed beneficiary clause" in the policy, and then permit him to take from his business, and therefore from his creditors, $30,000 and pay as premiums on these policies, and then go into bankruptcy and have all claims of creditors wiped out against him by the beneficent bankruptcy laws, and then, the next day after he is discharged, let him go to the insurance companies, where he has deposited these large amounts of money, sign his policies, and take from the insurance companies $18,000 cash surrender value and put it in his pocket, and then snap his fingers at his creditors and laugh at the absurdity of such a law. We would then have the anomaly of a rich bankrupt. I assert with confidence that the Legislature of North Carolina never intended that this enactment should have such effect.

But I am admonished by counsel for the bankrupt that I should follow the decision in Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018. In that case the Legislature of the state of Washington enacted that "the proceeds or avails of all life insurance shall be exempt from all liability for any debt." No one for a moment would contend that such an act of the Legislature of North Carolina would be constitutional, because section 10 of the Constitution of North Carolina, with reference to insurance policies, cannot be enlarged or restricted.

The statute of Washington in the Holden-Stratton Case was upheld on the ground that the Constitution gave the Legislature the power to enact such a law, although it was contended that the exemption was in conflict with the Constitution of that state. That legislative enactment was based upon the following language in the Constitution: "The Legislature shall protect by law from forced sale a certain portion of the homestead and of the property of all heads of families." It was claimed that this language imposed a limitation on the general power of the Legislature to determine the amount and character of the property which would be exempt. Chief Justice White, quoting the Constitution of California, which has an identical provision, said: "It has been decided that the character and amount of property which shall be exempt from execution is purely a question of legislative policy." This provision of the Washington Constitution, under which the Holden-Stratton Case was decided, is totally different from the constitutional provision with reference to insurance policies in North Carolina. In the Washington case the Constitution gave the Legislature the right to exercise "legislative policy" as to what property should be exempted. It will be noted, also, that the insurance policy involved in the Holden-Stratton Case did not contain the "changed beneficiary clause," but was made payable to the wife without the right to change the beneficiary.

I therefore hold and adjudge that the trustee is vested by operation of law with the title to all ten of the policies in question, for the purpose of securing their cash surrender value and loan value, to be applied to the debts of the bankrupt; and it is so ordered.